

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

THANH THACH,                                      :

    Plaintiff,                                  :

                                      :

v.                                                :       Civil Action No. 3:13cv551

TRANS UNION, LLC,                                 :

                                        :

Serve: Corporation Service Company, *Reg. Agent* :
       Bank of America Center, 16th Floor
       1111 East Main Street
       Richmond, VA 23219                         :

and                                               :

CAPITAL ONE, NATIONAL ASSOCIATION                 :

Serve: Corporation Service Company, *Reg. Agent* :
       Bank of America Center, 16th Floor
       1111 East Main Street
       Richmond, Virginia 23219                   :

                Defendants                      :

## COMPLAINT

COMES NOW the Plaintiff, THANH THACH ("Ms. Thach" or "Plaintiff"), by counsel, and for her Complaint against the Defendants, allege as follows:

### PRELIMINARY STATEMENT

1.    This is an action for statutory, actual, and punitive damages, costs, and attorneys' fees brought pursuant to 15 U.S.C. § 1681, *et seq.* (the Fair Credit Reporting Act or "FCRA").

2.    Trans Union, one of the "Big 3" consumer reporting agencies, has a long history of consumer complaints and lawsuits alleging (and establishing) that it unreasonably *mixed the*

credit files and information of one consumer with the credit reports of another consumer. This mixed file problem is caused by the Defendant's overly broad matching criteria used to sort data into a Trans Union credit file.

3.      In this case, representative of numerous others, Trans Union combined or mixed the credit files of the Plaintiff with other individuals, including her mother, even though their first names are entirely different, their dates of birth are thirty years apart and in different months, and social security numbers are different.

4.      Plaintiff alleges claims against Trans Union under the FCRA, 15 U.S.C. §§1681e(b) and 1681i for Trans Union's failure to reasonably ensure the maximum possible accuracy of her credit reports and to investigate and correct the Plaintiff's credit files when she disputed the inaccuracies.

5.      Plaintiff also alleges individual claims against Capital One under the FCRA, 15 U.S.C. §§ 1681s-2 and § 1681b based on its failure to conduct a reasonable investigation after the Plaintiff disputed multiple accounts with Capital One appearing on her credit report and for obtaining and using Plaintiff's consumer reports without a permissible purpose to do so.

## JURISDICTION

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

7.      Plaintiff is a natural person residing in Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. §1681a(c).

8.      Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

2

9. Upon information and belief, Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

10. Upon information and belief, Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

11. Upon information and belief, Capital One National Association ("Capital One"), is a company with its principal place of business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia as a credit lender and a "furnisher" as governed by the FCRA.

## FACTS

12. In or around August 2012, Plaintiff applied for a mortgage loan with McLean Mortgage Corporation who obtained her credit report with Trans Union.

13. Upon review, Plaintiff discovered that her credit file contained approximately 47 credit accounts that did not belong to her, including several accounts with Capital One.

14. To make matter worst, more than ten of the accounts reflected severely derogatory entries that did not belong to her, including several Capital One accounts with past due balances that were charged off and submitted to collections.

15. Trans Union was also reporting that an unsatisfied judgment was entered against the Plaintiff in the Fairfax County Circuit Court in favor of Palisades Collection, LLC in the amount of $1224.

3

16.     These reportings were inaccurate. The 47 credit accounts belonged to someone other than the Plaintiff and no judgment was ever obtained against her by Palisades Collection, LLC, or anyone else for that matter.

17.     On January 29, 2013, Plaintiff mailed a written dispute letter to Trans Union.

18.     In her letter, Plaintiff explained (and separately identified) that there were 47 accounts in her Trans Union credit report that did not belong to her and that no judgment was ever obtained against her in the Fairfax County General District Court.

19.     Plaintiff also provided a handwriting exemplar, copies of her license, passport, and social security card to prove these accounts belonged to someone else.

20.     Upon receipt of the Trans Union Investigation Results dated February 21, 2013, Plaintiff was shocked to learn that after the investigation, Trans Union verified that eight of the disputed accounts belonged to Ms. Thach and would remain on her credit report, including two accounts with Capital One. This verification was inaccurate, as Plaintiff had never opened the reported accounts.

21.     Plaintiff was also shocked that Trans Union altogether failed to investigate the status of 29 of the accounts identified in her dispute letter and the judgment from the Fairfax County Circuit Court.

22.     Additionally, the credit file listed other information that does not belong to the Plaintiff, including, for example, addresses and telephone numbers that do not belong to the Plaintiff.

23.     Upon information and belief, Trans Union's employees failed to investigate the 29 disputed accounts because its standard investigation procedures utilize outsource vendors in the Philippines, Costa Rica, and/or India who are expected to perform a certain number of

investigations per hour and are paid according to the quantity of disputes processed – not the quality.

24.     Upon information and belief, these accounts remained on Plaintiff's credit file after the January 29, 2013 dispute letter.

25.     These derogatory and mismatched sets of credit information severely reduced the Plaintiff's credit scores and prohibited her from obtaining a loan.

26.     On or around June 3, 2013, Plaintiff mailed another dispute letter to Trans Union and advised it that it verified 9 accounts that did not belong to her. The letter further indicated that Trans Union's Investigation Results altogether failed to provide the status of 29 accounts within her credit file. The letter requested Trans Union to investigate the 9 accounts it verified and the other 29 accounts that it previously ignored.

27.     Upon receipt of the Trans Union Investigation Results dated July 1, 2013, Plaintiff was once again shocked to learn that after the investigation, Trans Union verified that 9 of the disputed accounts belonged to Ms. Thach and would remain on her credit report, including two accounts with Capital One. This verification was inaccurate, as Plaintiff had never opened the reported accounts.

28.     Worst yet, Trans Union's Investigation Results altogether failed to address 26 of the 29 disputed accounts within her credit file and verified 3 of the other accounts omitted from its previous Investigation Results dated February 21, 2013, including an additional account with Capital One that did not belong to her.

29.     Almost all of the verified accounts were severely derogatory and significantly reduced Plaintiff's credit score and ability to obtain a mortgage.

30.     The letter did not mention any of the other disputed accounts.

31.     These reportings were false.  Plaintiff never signed any application for credit for any of the disputed credit accounts and was never legally responsible for the repayment of these accounts.

32.     Around this same time, Plaintiff also discovered that Capital One obtained her consumer reports without a lawful purpose on multiple occasions. Plaintiff never authorized the Capital One to receive her credit reports.

33.     The Defendants, in all regards, failed to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute, causing her significant damages.

34.     As a result of this negative credit reporting, Plaintiff suffered actual damages.

### Trans Union's Double Standard and Willful Misconduct

35.     Trans Union has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

36.     In each of these instances, Trans Union matched the creditor inquiry (request for a credit report) using very broad matching rules. Thach is common, just as would be Lopez, Smith, Patel, Kim or Lee.  But they each have different first names (Thanh versus Chia), dates of birth, and social security numbers.  The only identifying information that they share is a last name and address – which is common in almost every household in the United States.

37.     However, these lax thresholds for matching do not cut both ways.   When a creditor requests a consumer report, Trans Union will furnish a report and information matched to it even with just a name and address.  In contrast, if the Court or any consumer requests their report, Trans Union will impose substantial exact match barriers and will not furnish a report that is not a 100% match to full name, address, date of birth and social security number.

38.     While Trans Union claims that partial matches are reasonable because of possible creditor transcription error – a theoretical typo transposing two social security digits – Defendant does not possess any actual research or data to support its contrived risk of error.

39.     In contrast, Trans Union has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

40.     As early as 1992, the Attorneys General of seventeen states were forced to file a lawsuit against Trans Union because of its conduct in connection with mixing consumer credit files. In settling the enforcement action brought by the AGs, Trans Union agreed to make the following practice changes:

> 1. *Implement* or continue to utilize and maintain reasonable *procedures to avoid the occurrence or reoccurrence of Mixed Files.*1
>
> ...
>
> 3. Analyze incoming data submitted by Subscribers to Trans Union as well as historical statistics in an attempt to detect data format errors, programming errors, or other inaccuracies, and take such corrective action with respect thereto as may be appropriate.
>
> 4. *Take reasonable measures to prevent reporting of information that is not likely to pertain to the Consumer* who is the subject of the Report and to prevent duplicate listings of an account with the same member number, opening date and consumer account number.
>
> ...
>
> 5. [a]dvise their Subscribers, that they shall attempt to (i) *obtain Full Identifying Information from Consumers*; (ii) use, when provided by the Consumer, Full Identifying Information when reporting Credit Information to Trans Union; and (iii) *use Full Identifying Information when requesting Consumer Reports*,

---

1 The October 26, 2012 Consent Order defines Mixed File as "a Consumer Report in which some or all of the information pertains to a person or persons other than the person or persons who is/are the subject of the Consumer Report."

except where a reliable and accurate alternative methodology is utilized for requesting Consumer Reports.[2]

(emphasis added).

41.     Trans Union's computer system causes these mixes because Defendant, despite the 1992 Consent Order, does not require or use full identifying information for a potential credit grantor's inquiry.  It does this in order to sell more credit reports:

Q.  What is the minimum indicative information that TransUnion will require from the user of the credit report, such as a bank, before it sells a credit report to that entity?

A.  Generally it's the consumer's first name, last name and current address.

Q.  Okay.  The Social Security number is not required before a sale is conducted, correct?

A.  That is correct.

Q.  The date of birth is also not required, correct?

A.  Correct.

Q.  The name, first name could be a nickname, correct?

A.  Yes.

Q.  It could be just an initial, correct?

A.  Yes.

Q.  The first or last name does not need to match letter for letter, correct?

A.  Correct.

See Romanowski Dep. 42:14-43:9, July 10, 2009.  Thus, during an "inquiry" (or a purportedly new application for credit) Trans Union could mix the files of two consumers with similar

---

2 "Full Identifying Information" as defined in the Consent Order as the "full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number."

personal identifying information because it does not require or use full identifying information.

42.     Trans Union knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".

43.     Trans Union has been sued repeatedly for failing to prevent mixed consumer files. *See, e.g., Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union, LLC*, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011).

44.     Numerous cases alleging a mixed file and/or a failure to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this District and Division. *See e.g., Mullins v. Equifax Information Services, LLC*, 3:05cv888, 2007 WL 2471080 (E.D. Va. August 27, 2007); *Saunders v. Branch Banking and Trust Co.*, 3:05cv731 (E.D. Va.); *Ross v. Experian Information Solutions, Inc.*, 3:09cv144 (E.D. Va. 2009); *Baker v. TransUnion, LLC*, 3:07-cv-107 (E.D. Va. 2007) *Alejandro Abraham Lopez, Jr., v. Trans Union, LLC*, Civil Action No. 1:12-cv-902 (E.D. Va. 2012); *Alejandro Lopez, Sr. v. Trans Union, LLC*, Civil Action No. 1:12cv1325 (E.D. Va. 2012).

45.     Trans Union knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem. Trans Union could instead use its "do not merge" procedure and

match only with correct social security numbers and dates of birth. As the United States District Court for the Eastern District of Pennsylvania explained:

> When a file has a "do not merge" tag placed on it then digit-for-digit matching of all nine digits of a social security number are required. Implementing the "do not merge" procedure only takes a few seconds, and it "involves the mere click of a button on a computer screen."

*Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 284 (E.D. Pa. 2010).

46.    Trans Union has been previously warned of its FCRA misconduct. The Pennsylvania federal court cautioned Defendant: "Given Defendant's general knowledge of the mixed file problem and Defendant's failure to act to ensure these problems did not continue, a jury could reasonably find that Defendant acted in reckless disregard and summary judgment should be denied." *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 289 (E.D. Pa. 2010). And United States District Court Judge Payne responded to Trans Union's counsel in a different FCRA inaccuracy case:

> THE COURT: Look, it's time that you-all came to realize that when a Court tells you something you have to realize it, accept it, and do something about it. If you don't, you're in trouble. It's time that your client understood that, and that's what he's trying to prove. And if you don't do it, you get punished for doing it. That's just the way life is.

*Mullins v. Trans Union*, 3:05cv888 (E.D. Va. 2006).

47.    Despite these lawsuits, Trans Union has not significantly modified its procedures to assure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

48.    Upon information and belief, Trans Union has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

49.     Accordingly, Trans Union's violation of 15 U.S.C. § 1681e(b) was willful and Trans Union is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

50.     Furthermore, Trans Union has been sued repeatedly for failing to conduct a reasonable reinvestigation in response to a consumer's dispute to determine whether the disputed information was inaccurate and to subsequently delete the information from the file, including within this District and Division. *See, e.g., Mullins v. Equifax Information Services*, LLC, 3:05cv888-REP; *Johnson v. Equifax Information Services, LLC,* 3:02cv523-RLW; *Saunders v. TransUnion, LLC*, 3:05cv731-DWD.

51.     Trans Union's failure to modify its procedures caused substantial harm to the Plaintiff.

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681e(b))**
**(TRANS UNION)**

52.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

53.     Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

54.     As a result of this alleged conduct, action, and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

55.     Trans Union's conduct, actions, and inaction were willful, rendering it liable for

punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

56.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT TWO:
### (Violation of 15 U.S.C. § 1681i(a)(1))
### (TRANS UNION)

57.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

58.     Defendant violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

59.     As a result of this conduct, the Plaintiff suffered actual damages.

60.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

61.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

## COUNT THREE:
### (Violation of 15 U.S.C. § 1681i(a)(2))
### (TRANS UNION)

62.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

63.     Defendant violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is

not limited to, failing to send to the furnisher all relevant information that it received in Plaintiff's dispute letter.

64.     As a result of this conduct, the Plaintiff suffered actual damages.

65.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

66.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT FOUR:**
**(Violation of 15 U.S.C. § 1681i(a)(4))**
**(TRANS UNION)**

67.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

68.     Defendant violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

69.     As a result of this conduct, the Plaintiff suffered actual damages.

70.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71.     The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT FIVE:**
**(Violation of 15 U.S.C. § 1681i(a)(5))**
**(TRANS UNION)**

72.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

73.     Defendant violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified.

74.     As a result of this conduct, the Plaintiff suffered actual damages.

75.     Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

76.     The Plaintiff is entitled to recover actual damages, statutory damages, costs, and her attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

<strong>COUNT SIX:<br>(Violation of 15 U.S.C. §1681b(f))<br>(CAPITAL ONE)</strong>

77.     Plaintiff reiterates and incorporates the allegations contained above as if fully set out herein.

78.     Capital One violated the FCRA, 15 U.S.C. §1681b(f) by obtaining and using the Plaintiff's consumer reports without a permissible purpose to do so.

79.     As a result of Capital One's conduct, actions and inaction, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

14

80.     Capital One's conduct, actions and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

81.     The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys fees, Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT SEVEN:**
**(Violation of 15 U.S.C. §1681s-2(b)(1)(A))**
**(CAPITAL ONE)**

82.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

83.     On one or more occasions within the past two years, by example only and without limitation, Capital One violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

84.     When the Plaintiff mailed her disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their furnisher-customers such as Capital One. It is an automated system and the procedures used by the CRAs are systemic and uniform.

85.     When Trans Union receives a consumer dispute, it (usually via an outsourced vendor) translates that dispute into an "ACDV" form.

86.     Upon information and belief, the ACDV form is the method by which Capital One has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

87.     On information and belief, the Plaintiff alleges that to date Capital One has never complained to the CRAs about the amount of information they receive regarding a consumer dispute through the e-Oscar system or through ACDVs.

88.     If Capital One receives a consumer dispute ACDV form, they are aware that they may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

89.     Based on the manner in which Trans Union responded to the Plaintiff's disputes, representing that Capital One had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Trans Union did in fact forward the Plaintiff's dispute via an ACDV to Capital One.

90.     Capital One understood the nature of the Plaintiff's dispute when they received the ACDV from the credit bureaus.

91.     When Capital One received the ACDV from the credit reporting agencies, it as well could have reviewed its own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

92.     Notwithstanding the above, Capital One follow a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Capital One does is review its own internal computer screen for the account and repeat back to the ACDV system the same information that Capital One already had reported to the CRAs.

93.     When Capital One receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

94.     As a result of Capital One's violations of 15 U.S.C. §1681s-2(b)(1)(A), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

95.   The violations by Capital One were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

96.   The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

97.   Capital One was aware of the *Johnson v. MBNA*, FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

98.   On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Capital One intended its employees or agents to follow.

99.   On information and belief, the Plaintiff alleges that Capital One's employees or agents did not make a mistake (in the way in which he or she followed Capital One's procedures) when he or she received, processed and responded to the CRAs' ACDVs.

100.   On information and belief, the Plaintiff alleges that Capital One has not materially changed its FCRA investigation procedures after learning of their failures in this case.

101.   In the alternative, Capital One was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

102.   Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT EIGHT:**
**(15 U.S.C. § 1681s-2(b)(1)(B))**
**(CAPITAL ONE)**

103.    Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

104.    On one or more occasions within the past two years, by example only and without limitation, Capital One violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

105.    As Plaintiff detailed in Count Seven, Capital One has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

106.    Capital One is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

107.    Capital One does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

108.    Capital One understood the Plaintiff's disputes and that the accounts did not belong to her.

109.    Nevertheless, Capital One ignored such information and instead simply regurgitated the same information it had previously reported to the CRAs.

110.    As a result of Capital One's violations of 15 U.S.C. §1681s-2(b)(1)(B), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

111.    The violations by Capital One were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Capital One was negligent, which entitles Plaintiff to recover under 15 U.S.C. §1681o.

112. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT NINE:
### (15 U.S.C. § 1681s-2(b)(1)(C) and (D))
### (CAPITAL ONE)

113. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

114. On one or more occasions within the past two years, by example only and without limitation, Capital One violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the Capital One's representations within Plaintiff's credit files with Trans Union without also including a notation that these debts were disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

115. Specifically, Capital One failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the CRAs.

116. On information and belief, the Plaintiff alleges that Capital One rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

117. Furthermore, Capital One knew that the Plaintiff disputed the subject account through both of her dispute letters to Trans Union.

118. The Plaintiff's disputes were bona fide as reflected by the dismissal of the lawsuit.

119. As a result of Capital One's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

120. The violations by Capital One were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

121. Capital One was aware of the *Saunders v. B.B. & T* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

122. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Capital One intended its employees or agents to follow.

123. On information and belief, the Plaintiff alleges that Capital One's employee or agent did not make a mistake (in the way in which he or she followed Capital One's procedures) when he or she received, processed and responded to the CRAs' ACDVs and did not include the XB code in the CCC field.

124. On information and belief, the Plaintiff alleges that Capital One has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

125. In the alternative, Capital One was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

126. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Capital One in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, the Plaintiff demands judgment for compensatory, statutory, and punitive damages against the Defendants; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**THANH THACH**


By: _____
Of Counsel


Kristi Cahoon Kelly, VSB#72791
Andrew J. Guzzo, VSB #82170
SUROVELL, ISAACS, PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 – Telephone
(703) 591-9285 – Facsimile
Email: kkelly@siplfirm.com
Email: aguzzo@siplfirm.com

Leonard A. Bennett, Esq., VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Telephone
E-mail: lenbennett@clalegal.com

*Counsel for Plaintiff*